## SOLOMON et al. v. BENJAMIN.
### No. 5246.

Circuit Court of Appeals, Seventh Circuit.
Jan. 30, 1935.

Rehearing Denied Feb. 21, 1935.

Justus Chancellor, of Chicago, Ill., for appellants.

Isadore Goldstein, William Goldstein, and Louis E. Levinson, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ-HENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from a decree of the District Court in favor of appellee on a bill of interpleader filed by the New York Life Insurance Company, under which it paid into the registry of the District Court $9,-930.80, the proceeds of two insurance policies on the life of Daniel Hosanna, deceased, there being adverse claimants to the proceeds of the policies.

Appellee, Esther J. Benjamin, claimed the fund by virtue of being the beneficiary named in the two policies. She alleged the insured met his death in a manner unknown

to her and that she did not cause or help to cause his death.

Appellants filed separate answers, in which they denied that appellee was entitled to receive the proceeds of the policies because she feloniously caused or assisted in causing the death of the deceased.

Daniel Hosanna, deceased, orphaned in his early infancy, was reared in Persia by his uncle, Samuel Lazar, an appellant. Upon coming of age he immigrated to America, with money furnished by his uncle, and from 1926 to 1932 lived in Chicago with appellee, who claimed to be distantly related to him, and her husband, Joash Benjamin. At the time of his death he was about forty-eight years of age and unmarried. He had four policies of insurance on his life in addition to the two involved in this case. The policies here in suit contain a clause providing that "Double Indemnity" shall be payable where the death results from "bodily injury effected solely through external, violent and accidental means," and shall not be payable where death shall result "from the taking of poison * * * whether voluntarily or otherwise."

As deceased was returning home from work at about 3 o'clock in the morning of Labor Day, 1932, a few weeks before his death, he was assaulted just as he entered the vestibule of the apartment house in which Mrs. Benjamin was living. He was beaten over the head, and when he "woke up" he rang the bell and asked appellee to help him upstairs; she refused to, or to permit her husband to go to his assistance.

On October 19, 1932, deceased took appellee's car to get some dirt for a lady's flowers, and drove to a vacant lot which belonged to him. The lot was located several miles from Mrs. Benjamin's home and was surrounded by shrubbery growing so high that only the top of an automobile could be seen above it. There he was beaten over the head and his skull fractured, and thereafter the car was driven over his body. He was found and removed to a hospital, where he died on the following day. Immediately after the murderous assault, a witness saw a man driving rapidly away in appellee's car, which was later abandoned in Oak Park, Ill., and recovered by appellee.

■ On the trial, appellee made her proof first. When she closed her case, appellants began offering their proof. Late in the afternoon the administrator had offered some documentary evidence, when the record shows the following occurred:

"The court then said: Any further testimony? Counsel for said defendant administrator and said defendant Lazar said: That is all we have here, your Honor (the hour then being about 5:30 P. M.). Counsel for Mrs. Benjamin said: We have closed our case and we ask for a finding. The court then stated: The finding will be in favor of the claimant Esther J. Benjamin. I cannot see anything in this case but a suspicion, and for the life of me I do not see any foundation for the suspicion. * * *"

No objection was made and no exception taken. No further time was requested in which to procure or produce additional testimony; no offer to prove any facts by any designated witness was made. The trial court had seen all of the witnesses, heard them testify, and while the conclusion of the trial was somewhat summary, the record does not show any right on the part of appellants to complain. No serious question of law is involved.

Appellants assigned as error the refusal of the court to grant a continuance for the trial of the case on February 8, 1934. The motion was addressed entirely to the discretion of the court and asked for the continuance on the ground that the name of the person who administered the fatal blows to the deceased on October 19, 1932, had just been discovered. The original answers to the bill of interpleader were filed in January and March, 1933. The cause was continued four or five times and finally was again set for February 6, 1934. The last motion for a continuance was made February 7, 1934.

■ The affidavit signed by Lazar discloses the fact that on February 4, 1934, information was procured for the first time which strongly and definitely tends to show who beat the deceased over the head on October 19, 1932, from which injuries the insured died, and that it is such that it is believed the murderer of said deceased can be apprehended; that on the next day steps were taken to communicate with and have action taken by the proper law enforcement officers for the apprehension of the murderer. It was further charged that the evidence tends to show that the person who hit deceased over the head on October 19, 1932, is a person in the immediate family of Esther J. Benjamin. The affidavit tends to show that appellants believed if the person referred to were apprehended and tried it would dispose of the issues involved in this case. This case would not be concluded by a conviction, but would still have to be tried upon

its own merits, regardless of the outcome of the criminal case. Lillie v. Modern Woodmen of America, 89 Neb. 1, 130 N. W. 1004. According to the affidavit of Samuel Lazar, the information was in their hands, so far as it went, and there is no showing that it was not available for use in this trial. The failure to allow the motion is not reversible error.

Other assignments of error complain of a failure to rule upon objections in connection with the testimony of Agnes Griffith, in a certain deposition taken in New York. Her testimony was taken for the purpose of showing that the change of beneficiary, substituting the name of Esther J. Benjamin in one policy, was executed as far as the insurance company was concerned. The testimony was somewhat indefinite. She stated that the vice president of the insurance company and all those to whom he had delegated the power under his supervision, including the superintendent of the division of policy changes, his assistants and six or seven clerks designated by him, including herself, had authority to execute for the company in the name of the vice president, changes in beneficiaries in the regular course of business. She testified that she made the necessary indorsements to the policy in question, and explained her authority in that regard. Her evidence was taken with the agreement of counsel that it would be all that was necessary if she would say she was the person in charge of the matter for the company, which she did, so far as the policy in question was concerned.

Many of the things complained of were objected to upon the trial, but no exception taken to the rulings of the court, while there were other things to which no objections were interposed and no exceptions saved. This class of alleged errors is illustrated by the examination of the witness Sam Warda, who testified that Mrs. Benjamin, a number of years prior, had a conversation with him at his hotel, in which she asked him if he would kill her husband. Shortly after beginning his testimony, he was interrupted by the court, who attempted to ascertain how the witness happened to get there and who was responsible for bringing him into court. The court discharged him and ordered counsel for appellants to call another witness promptly. No objection was interposed to the ruling of the court and no exception taken, nor was any offer made to show the purpose for which this testimony was introduced.

Appellants interposed the charge that appellee had, directly or indirectly, contributed to the death of the insured and therefore should be denied recovery on the insurance policies. The only question presented by this review is whether or not there was any competent evidence to sustain the finding and holding of the court. There was, and in the light of that fact our course is limited. The burden as between the claimants was upon appellants to sustain that charge. The trial court felt they had failed in that regard and made his findings accordingly. In the light of that fact, and the state of the record, we do not feel at liberty to disturb the decree.

Affirmed.